NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DEBRA BLACKWELL,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2190

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01075-LAS, Senior Judge Loren A. Smith.

---

Decided:  March 24, 2026

---

MICHAEL FALLINGS, Tully Rinckey PLLC, Austin, TX, argued for plaintiff-appellant.

LIRIDONA SINANI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by CLAUDIA BURKE, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before LOURIE, CHEN, and STOLL, *Circuit Judges*.

CHEN, *Circuit Judge.*

Ms. Debra Blackwell appeals from a United States Court of Federal Claims (Claims Court) grant of summary judgment denying her claim under the Equal Pay Act (EPA), 29 U.S.C. § 206(d)(1), that she was allegedly paid less than a male colleague for working overtime. *Blackwell v. United States*, 171 Fed. Cl. 682 (2024) (*Decision*). Applying the test outlined in *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974), the Claims Court determined that Ms. Blackwell failed to demonstrate that her position and her colleague's position required "equal skill, effort, and responsibility" and were "performed under similar working conditions." The Claims Court also determined that, even if Ms. Blackwell had made a prima facie showing of a violation of the EPA, the government adequately rebutted her claim. Because we agree with the Claims Court that Ms. Blackwell did not raise a genuine dispute of material fact as to her prima facie case and, in any event, the government successfully raised its affirmative defense, we *affirm*.

## BACKGROUND

Since 2004, Ms. Blackwell has worked as a Supervisory Program Manager in the U.S. Department of Homeland Security, Customs and Border Patrol (Agency). *Decision*, 171 Fed. Cl. at 684. Her home office is the Agency's Office of Field Operations, located in Houston, Texas (Houston Field Office). *Id.* Her position falls within the 340 – Program Management Series[1] and is classified as a GS-14 pay grade. *Id.* at 684–85.

---

[1] During the pendency of the litigation, the Agency conducted a "desk audit" which determined that Ms. Blackwell's position should be reclassified from 340 – Program Management Series to 1801 – Supervisory Immigration

The scope of Ms. Blackwell's position includes managing twenty-seven border security programs, supervising a three-person team, interpreting Agency policy, communicating with stakeholders, and counseling supervisors and staff on immigration and nationality law and admissibility decisions. *Id.*; *see also id.* at 689. Ms. Blackwell's tour of duty is Monday through Friday from 7:30 AM to 4:00 PM. Ms. Blackwell periodically is asked to work after-hours as needed. *See* J.A. 208 [18:11–18]. This work consists of fielding phone calls and replying to emails from her supervisors.

Mr. Jeremy Luczkowski is a federal employee who works as a Border Security Coordinator in the same Houston office as Ms. Blackwell. *Decision*, 171 Fed. Cl. at 685. His position falls within the 1895 – Customs and Border Protection Series and is also classified as a GS-14 pay grade. *Id.* Additionally, the position is covered by the Customs Officer Pay Reform Act (COPRA), 19 U.S.C. § 267, which requires overtime compensation paid at two times the basic hourly rate for work that is "officially assigned" and exceeds 8 hours in a day or 40 hours in a week. *Id.*

The scope of Mr. Luczkowski's position includes coordinating more than thirty-nine enforcement programs, supervising a four-person team, overseeing eighteen officers in various task forces, and counseling for the Federal Emergency Management Agency's (FEMA) Incident Command System, National Incident Management System, and Continuity Operations. *Decision*, 171 Fed. Cl. at 685. Mr. Luczkowski's expertise in emergency management results in his "frequent deployments to national and international operations away from the Houston Field Office." *Id.* (quoting J.A. 362 ¶ 9).

---

Advisor Series. *Decision*, 171 Fed. Cl. at 686–87. This reclassification does not affect our analysis.

Mr. Luczkowski's tour of duty is the same as Ms. Blackwell's—Monday through Friday from 7:30 AM to 4:00PM. *Id.* Between 2018 to 2019, Mr. Luczkowski was deployed to the CBP Baltimore Field Office to support Hurricane Florence operations as the Operations Section Chief; Eagle Pass and Del Rio, Texas to mitigate a border crisis; and San Diego, California to serve as the Logistics Section Chief during Operation Secure Line. *Id.* at 685–86. Mr. Luczkowski recorded and earned overtime compensation for these deployments.

Mr. Erik Shoberg, Assistant Director of Field Operations, is the direct supervisor for both Ms. Blackwell and Mr. Luczkowski. In 2019, Mr. Shoberg took a brief absence and Ms. Blackwell took over his duties, serving as acting Assistant Director of Field Operations. *Id.* at 686. While reviewing overtime cap waiver requests in her acting Assistant Director role, Ms. Blackwell learned Mr. Luczkowski earned approximately $45,000 in overtime compensation under COPRA in 2019 for emergency management response duties. *Id.*

On September 13, 2019, Ms. Blackwell filed an administrative grievance seeking compensation for "ten hours of overtime work per week for the last several years." *Id.* Mr. Shoberg denied her request in March 2020 because (1) she had not been ordered nor approved to perform the weekly overtime work; (2) her duties differed substantially from Mr. Luczkowski's; and (3) she had not provided documentation supporting her claim. *Id.* Mr. Shoberg encouraged Ms. Blackwell to search for and submit records that corroborated her request. *Id.* In response, Ms. Blackwell filed a formal grievance which was denied by the Agency on April 9, 2020. *Id.*

Ms. Blackwell filed a complaint on September 18, 2020 in the United States District Court for the Southern District of Texas; the case was later transferred to the Claims Court with both parties' consent. *Id.* at 687.

Ms. Blackwell's complaint requested compensation under the EPA and COPRA "for loss of promotional potential, reputation, lost wages, [and] lost job benefits she would have received." *Id.* (alteration in original). The government moved for partial dismissal of her claims. *Id.*

On January 21, 2022, the Claims Court dismissed Ms. Blackwell's EPA claim for overtime allegedly earned before September 18, 2018, because the statute of limitations precluded claims accruing before that date, and dismissed Ms. Blackwell's COPRA claim because that statute did not cover her employment position. *Blackwell v. United States*, No. 21-1075, 2022 WL 2315088, at *4, *6 (Fed. Cl. Jan. 21, 2022).

After a period of discovery, the government filed a summary judgment motion which the Claims Court granted. In its decision, the Claims Court determined that Ms. Blackwell had fallen short in her prima facie case. The Claims Court determined that Mr. Luczkowski was an "inapt comparator" because Ms. Blackwell's and Mr. Luczkowski's jobs required (1) different skills, (2) different effort, (3) different responsibilities, and (4) different working conditions. *Decision*, 171 Fed. Cl. at 689–90. The Claims Court also found that the government had successfully raised an affirmative defense. *Id.* at 690.

Ms. Blackwell timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"[W]e review a grant of summary judgment by the Court of Federal Claims de novo." *Anderson v. United States*, 23 F.4th 1357, 1361 (Fed. Cir. 2022) (citation omitted).

The EPA codifies "the principle of equal pay for equal work regardless of sex." *Boyer v. United States*, 97 F.4th 834, 839 (Fed. Cir. 2024) (quoting *Corning Glass*, 417 U.S. at 190). In order to make a prima facie case of violation of

the EPA, a plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass*, 417 U.S. at 195 (quoting 29 U.S.C. § 206(d)(1)). To survive summary judgment, Ms. Blackwell need only raise a genuine dispute of material fact as to whether Mr. Luczkowski is a proper comparator. *See First Com. Corp. v. United States*, 335 F.3d 1373, 1379 (Fed. Cir. 2003); RCFC 56(a).

"Once established, the burden of proof shifts to the employer to prove that the differential is made pursuant to one of the four affirmative defenses[:]" "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Boyer*, 97 F.4th at 839, 841 (citations omitted).

## I.    Prima Facie Case

Ms. Blackwell's prima facie case for her EPA claim rests solely on Mr. Luczkowski as her comparator. In addition to contesting the Claims Court's "skill" and "effort" analysis, Ms. Blackwell argues that the Claims Court erred by finding Mr. Luczkowski had differing responsibilities.

The Claims Court concluded that Ms. Blackwell's and Mr. Luczkowski's responsibilities materially differed because—in addition to supervising individuals and overseeing CBP programs—Mr. Luczkowski oversaw "four special task forces." *Decision*, 171 Fed. Cl. at 690. Further, the Claims Court noted that during Mr. Luczkowski's overtime deployments, he led "special assignments." *Id.*

Ms. Blackwell does not dispute the Claims Court's determination that Mr. Luczkowski's task force and special assignment responsibilities are not similar to any of her job responsibilities. Rather, she highlights their similar people management roles and notes responsibilities unique to

her position that she believes make up for everything else. This argument is unavailing.

Ms. Blackwell is correct that she and Mr. Luczkowski both supervise a small team of CBP employees (teams of three and four, respectively) and manage a similar volume of border security programs (twenty-seven and thirty-nine, respectively). *See id.* at 684–85. However, in Mr. Luczkowski's task force work, he oversees *an additional* eighteen officers to which Ms. Blackwell offers nothing comparable. The same is true for Mr. Luczkowski's special assignment responsibilities. Ms. Blackwell's attempts to make up for that divergence in responsibilities merely emphasize that their jobs are indeed different. *See* Appellant Reply Br. 7 (highlighting that, unlike Mr. Luczkowski, Ms. Blackwell's position "required meeting with consultants, contractors, and/or business executives in the private sector" (internal quotation marks and citation omitted)).

Ms. Blackwell also argues that the Claims Court erroneously determined Ms. Blackwell and Mr. Luczkowski were subject to different working conditions. We disagree.

The Claims Court reasoned that Ms. Blackwell's and Mr. Luczkowski's working conditions were different because, in addition to being primarily stationed at the Houston Field Office, Mr. Luczkowski *also* performed duties while "working outdoors, in emergency situations, and in adverse conditions with the possibility of physical attacks." *Decision*, 171 Fed. Cl. at 690.

Ms. Blackwell contends that Mr. Luczkowski's lack of testimony that he experienced danger on the job or "chased down people of interest" indicates his role possesses no "possibility of physical attacks." Appellant Br. 19–20. Without providing a cite, she further insists that Mr. Luczkowski's San Diego deployment "was performed in a hotel room, making car and hotel reservations." Appellant Reply Br. 9.

Even assuming arguendo that Ms. Blackwell's allegations are true, she does not address that at least *some* of the time, Mr. Luczkowski was deployed, outdoors, in a different location than the Houston Field Office. In contrast, Ms. Blackwell testified that she had never been assigned to do work outside of the Houston Field Office. *See* J.A. 310 [141:10–16]. Moreover, Mr. Luczkowski's deployments were the source of his overtime pay; the entirety of Ms. Blackwell's overtime pay claims consist of work she did in the Houston Field Office. Therefore, Ms. Blackwell cannot show her job and Mr. Luczkowski's job, and more specifically their overtime assignments, are "performed under similar working conditions." *Corning Glass*, 417 U.S. at 195.

Because Ms. Blackwell must demonstrate each element articulated in *Corning Glass* for her prima facie case, *see Moore v. United States*, 66 F.4th 991, 996–97 (Fed. Cir. 2023) (en banc), and she has failed to do so, we do not further address her arguments related to equal skill and effort.

## II.    Affirmative Defense

The Claims Court further determined that, even if Ms. Blackwell could demonstrate a prima facie case, the government nonetheless had also sufficiently established an affirmative defense: that the pay disparity between Ms. Blackwell and Mr. Luczkowski was due to differing statutory and regulatory schemes. The Claims Court noted that Mr. Luczkowski's overtime pay was governed by COPRA, while Ms. Blackwell's overtime pay was governed by Title 5, which permits overtime compensation for work that is "officially ordered or approved" and "performed by an employee" in excess of 8 hours in a day or 40 hours in an administrative workweek. 5 U.S.C. § 5542(a); 5 C.F.R. § 550.111(a). According to the Claims Court, because Ms. Blackwell had not proven that she performed the

overtime work, as was required under Title 5, the government had shown the pay differential was justified.

Ms. Blackwell argues she did perform the overtime work by highlighting her total email traffic in 2018 and 2019 as evidence. *See* Appellant Br. 22–23. From the email traffic, she "estimate[s] ten hours of work performed per week." *Id.* She also states that her overtime work included phone calls.

This argument must fail. Because Ms. Blackwell makes no showing that she actually performed the overtime work she says she has done, she cannot rebut the government's affirmative defense. The record does support Ms. Blackwell's claim that she performed some overtime work in the relevant period. *See, e.g.*, J.A. 212 [34:5–35:2] (Mr. Shoberg testimony indicating Ms. Blackwell worked overtime during a 2019 conference). However, she did not contemporaneously record her work and has no call records to support the extra time—despite claiming that her overtime work included fielding phone calls.

Instead, she offers evidence about her total email volume in 2018 and 2019 and claims that "her expertise" allows her to convert those emails into overtime hours. This is not enough. Ms. Blackwell does not compare her email volume in 2018 or 2019 to years she did not work overtime or discuss how many of those emails she sent or received after her normal tour of duty. She offers no conversion of her email volume to overtime pay beyond mere speculation. Yet another problem with her argument is that overtime pay must be "officially ordered or approved." *See Lesko v. United States*, 161 F.4th 1352, 1358 (Fed. Cir. 2025) (en banc) (citing 5 U.S.C. § 5542(a)). Ms. Blackwell has not produced evidence that any of her alleged overtime work was officially ordered or approved. Thus, we agree with the Claims Court that the government has sufficiently raised an affirmative defense to Ms. Blackwell's EPA claim.

CONCLUSION

We have considered Ms. Blackwell's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm*.

**AFFIRMED**